1
2
3
4
5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6

7  BECKY A. BUSSING,

8         Plaintiff,                          No.  2:14-CV-305-RHW

9         v.

10  CAROLYN W. COLVIN,                         **ORDER GRANTING IN PART
    Acting Commissioner of Social             PLAINTIFF'S MOTION FOR
11  Security,                                  SUMMARY JUDGMENT**

12         Defendant.

13        Before the Court are the parties' cross-motions for summary judgment, ECF

14  Nos. 14 & 17. Dana C. Madsen represents Plaintiff Becky A. Bussing and Special

15  Assistant United States Attorney Lars J. Nelson represents Defendant

16  Commissioner of Social Security (the "Commissioner"). Ms. Bussing brings this

17  action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the

18  Commissioner's final decision, which denied her application for Period of

19  Disability, Disability Insurance Benefits, and Supplemental Security Income under

20  Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F.

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS, in part,** Ms. Bussing's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings consistent with this Order.

## I.    Jurisdiction

Ms. Bussing filed concurrent applications for DIB and SSI on July 12, 2011. AR 167-182.  The alleged onset date was February 15, 2011. *Id.* Ms. Bussing's application was initially denied on October 28, 2011, AR 118-121, and on reconsideration on December 5, 2011. AR 124-126.  Ms. Bussing filed a written request for hearing on December 14, 2011. AR 129-130.

A hearing with Administrative Law Judge ("ALJ") Marilyn Mauer occurred on March 26, 2013, in Eugene, Oregon. AR 36-69. On April 22, 2013, the ALJ issued a decision finding Ms. Bussing ineligible for disability benefits. AR 19-31. The Appeals Council denied Ms. Bussing's request for review on July 22, 2014, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Bussing timely filed the present action challenging the denial of benefits, on September 16, 2014. ECF No. 4. Accordingly, Ms. Bussing's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

//

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§ 404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f)

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4**

& 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.   Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5**

whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

//

//

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6**

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Ms. Bussing was 31 years old at the alleged date of onset. AR 167. She graduated from high school and has attempted some college. AR 41. She is able to read and write in English. *Id.* The ALJ listed Ms. Bussing's past relevant work as a call center worker, a production weigher, a commercial cleaner, and a store laborer. AR 29.

Ms. Bussing has been diagnosed with depression, anxiety, and post-traumatic stress disorder. AR 249, 258, 313, 316. She is a former methamphetamine user who has not used since June 2011. AR 49, 259, 277.

Physically, Ms. Bussing has a history of migraines, AR 267, 270 286, 308, is hepatitis C-positive. AR 291, and has some thyroid dysfunction. She was diagnosed with possible hyperthyroidism in 2011, AR 282, 284, but an endocrinologist found that she did not have the symptoms associated with clinical hyperthyroidism in May 2012. AR 303.

### V.    The ALJ's Findings

The ALJ determined that Ms. Bussing was not under a disability within the meaning of the Act from February 15, 2011, her alleged date of onset.  AR 19.

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7**

**At step one**, the ALJ found that Ms. Bussing had not engaged in substantial gainful activity since February 15, 2011 (citing 20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*).   AR 21.

**At step two**, the ALJ found Ms. Bussing had the following severe impairments: depression, anxiety, post-traumatic stress disorder, migraine headaches, thyroid disease, and hepatitis C (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). AR 21.

At **step three**, the ALJ found that Ms. Bussing did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 22-25.

At **step four**, the ALJ found Ms. Bussing had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with these exceptions: (1) she can sit, stand, and walk for six hours in each activity for a combined total of eight hours of exertion; (2) she must be able to sit or stand at will while still performing the essential task; (3) she can frequently crouch, crawl, kneel, stoop, and climb ramps or stairs, but only occasionally climb ladders, ropes, or scaffolds; (4) she can understand and carry out simple instructions; and (5) she should not have any contact with the public or teamwork assignments. AR 25-29.

The ALJ also determined, based on vocational expert testimony, that Ms. Bussing is unable to perform any past relevant work. AR 29.

At **step five**, the ALJ found that after considering Ms. Bussing's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that she can perform: Small Products Assembler II, Table Worker, and Inspector/Packer. AR 30-31.

## VI.    Issues for Review

Ms. Bussing argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence because the ALJ erred by improperly discrediting Ms. Bussing's symptom testimony and medical opinion evidence. ECF No. 16 at 9-11.

## VII.   Discussion

### A. The ALJ Did Not Err in Assessing Ms.  Bussing's Credibility

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the

1  severity of her symptoms only by offering specific, clear, and convincing reasons

2  for doing so." *Id.*

3      In weighing a claimant's credibility, the ALJ may consider many factors,

4  including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

5  reputation for lying, prior inconsistent statements concerning the symptoms, and

6  other testimony by the claimant that appears less than candid; (2) unexplained or

7  inadequately explained failure to seek treatment or to follow a prescribed course of

8  treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273,

9  1284 (9th Cir.1996). When evidence reasonably supports either confirming or

10  reversing the ALJ's decision, the Court may not substitute its judgment for that of

11  the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). "General findings

12  are insufficient:  rather the ALJ must identify what testimony is not credible and

13  what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d

14  821, 834 (9th Cir. 1995).

15      The ALJ determined that Ms. Bussing's medically determinable

16  impairments could be reasonably expected to cause some symptoms; however, the

17  ALJ also found that Ms. Bussing's statements concerning the intensity, persistence,

18  and limiting effects of her symptoms were not entirely credible. AR 26. The ALJ

19  assessed Ms. Bussing's credibility regarding her mental and physical impairments

20  separately. AR 26-29.

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 10**

**1.  Clear and Convincing Standard**

An ALJ must provide specific, clear, and convincing reasons in a credibility determination unless the record contains "affirmative evidence of malingering." *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010).

In this case, the record does not demonstrate affirmative evidence of malingering. Dr. Renee Thompson, Psy.D., noted that Ms. Bussing's personality test results may involve malingering and "care should be taken to confirm these results from other sources." AR 251. However, Dr. Thompson elaborated that these results "may be a 'cry for help', an acute disturbance, <u>or</u> malingering." *Id.* (emphasis added) Likewise, Dr. Dennis Pollack, Ph.D., acknowledged the possibility of malingering, but also stated that this type of test score can be elevated when a patient has been abused, as is the case with Ms. Bussing. AR 352.

Personality testing was completed again by Dr. Frank Rosekrans, Ph.D., in June 2012 on behalf of the Washington State Department of Social and Health Services, AR 258-266. Retesting was suggested by Dr. Thompson in 2011 to confirm results. AR 251. Dr. Rosekrans's records specifically state there was <u>no</u> evidence of malingering. AR 260 (emphasis added). The record does not demonstrate "affirmative evidence of malingering." Thus, the clear and convincing standard shall apply. *Tommasetti*, 533 F.3d at 1039.

//

### 2.  Ms. Bussing's Credibility Regarding her Mental Impairments

The ALJ makes an adverse credibility determination with regard to Ms. Bussing's self-reported symptoms and severity. To reach this determination, the ALJ looked at multiple factors, including: (1) Ms. Bussing's delay in seeking treatment; (2) her failure to follow prescribed treatments; (3) inconsistency in the record; (4) records prior to her alleged onset date; and (5) her daily activities.

In most of these categories, the ALJ fails to provide specific, clear, and convincing reasons to discredit Ms. Bussing; however, with regard to her daily activities, the ALJ provides clear and convincing reasons that are supported by the record. Therefore, the Court does not find the ALJ erred in an adverse credibility determination.

### a.  Delay in Seeking Treatment

An ALJ may factor a claimant's failure to seek or follow prescribed treatment when assessing credibility. *Molina*, 674 F.3d at 1114. Additionally, when a claimant fails to "assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity'" of the claimant's testimony. *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ noted that the earliest recorded evaluation since Ms. Bussing's alleged onset date for her mental health issues occurred in July 2011. AR 26. This

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12**

was approximately six months after Ms. Bussing's alleged onset date. The ALJ

concluded that if Ms. Bussing's symptoms were disabling as of February 15, 2011,

she would not have waited to seek treatment for many months. This inference is

incomplete because it ignores the substantial evidence in the record that Ms.

Bussing had relapsed into her methamphetamine addiction during this period. AR

259, 277.

     There is no dispute that Ms. Bussing has struggled with an addiction to

methamphetamine. She was in treatment for methamphetamine from January 26

until February 16, 2011. AR 244-246. Despite her rehabilitation efforts, Ms.

Bussing suffered a relapse, as her records indicate she did not fully quit using

methamphetamine until June 2011. AR 259, 277.

     While Ms. Bussing's methamphetamine usage is not a contributing factor

material to the determination of disability,[1] it does offer a significant alternative

that the ALJ ignores entirely. While methamphetamine addiction is a questionable

reason for not seeking treatment, it counters the ALJ's conclusion that Ms. Bussing

did not seek treatment because her symptoms were not disabling enough to require

it. This is particularly true if Ms. Bussing used the drug in an attempt to deal with

her anxiety, as her medical record suggests. AR 259. Because the ALJ ignores such

---

[1] Had Ms. Bussing's methamphetamine usage been a contributing factor material
to the finding of disability, she would not be entitled to disability
benefits. *See Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007). However,
there is no dispute Ms. Bussing no longer uses methamphetamine and it does
not contribute to her current impairments.

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13**

significant information in the record, the Court does not find this to be a clear and convincing reason for an adverse credibility determination.

The ALJ also stated in her decision that "[t]he last evidence of record is from March 2013, indicating that the claimant did not seek further treatment for her symptoms for at least eight months" as reasoning to presume Ms. Bussing's symptoms were less than she alleged. AR 28. However, in her testimony, Ms. Bussing explained that her medical coverage through the state was not reinstated. AR 52. The ALJ does not address this in her decision and thus this gap in treatment also does not constitute a clear and convincing reason.

### b. Failure to Follow Prescribed Treatments

The ALJ also assessed Ms. Bussing's credibility by a perceived failure to follow through with treatments. This included references to Ms. Bussing's failure to attend counseling and to take prescribed medication.

On April 9, 2012[2], Ms. Bussing was discharged from the care of Nancy Ashburn, B.A. AR 347. Ms. Ashburn stated that Ms. Bussing stopped attending sessions and her account was to be closed at the end of April 2012 if she did not contact the counseling center. *Id.* The ALJ opined that this failure to continue her treatment "suggested that her symptoms were not significantly problematic to be of concern to her." AR 27.

---

[2] The ALJ's decision states the discharge from Ms. Ashburn was in January 2012, but the record shows April 9, 2012.

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14**

As Ms. Bussing notes in her briefing, she discontinued counseling sessions with Ms. Ashburn because Ms. Bussing moved to Spokane, ECF No. 14 at 13. Ms. Ashburn's office is located in Newport, Washington, AR 347, which is approximately fifty miles from Spokane. The record demonstrates that Ms. Bussing saw doctors in Spokane in March and May 2012. AR 301, 315. Relocation would provide a viable reason for failure to continue prescribed treatment with a specific provider. Further, Ms. Bussing's visit with Dr. Lowe in March 2012 was to seek treatment for her anxiety and depression. AR 315-317. This is inconsistent with the ALJ's assertion that Ms. Bussing failed to continue treatment because her condition was not as limiting as she alleged.

In addition to counseling, the ALJ asserts that Ms. Bussing did not take her medication as prescribed as further evidence that her symptoms were not as limiting as claimed. A claimant may provide reasons for resisting certain treatments, if they are related to an impairment, rather than a personal preference. *Molina*, 674 F.3d at 1114.

In some instances, the record demonstrates that Ms. Bussing's issues with certain medications were related to physical reactions. For example, records indicate that she was unable to take Buspar because it made her very ill. AR 315.

In other circumstances, her methamphetamine addiction is relevant. Ms. Bussing testified that she had to cease taking Imitrex because it made her feel like

she was "high on meth." AR 58-59. This is a legitimate concern for a former

methamphetamine addict that seeks to avoid relapse. Also, she was cautious with

taking lorazepam because of its addictive qualities. AR 315. While her

methamphetamine addiction was not found by the ALJ to be a severe impairment,

it was nonetheless found to be an impairment, and Ms.  Bussing's reasons for

failing to continue with these drugs have legitimate reasons grounded in this

impairment. Avoidance of relapse cannot be classified as a personal preference.

### c.  Inconsistency Between Symptoms and the Record

The record is inconsistent with objective, clinical observations of anxiety or

depression symptoms as opposed to self-reported symptoms. The ALJ generally

notes instances in which Ms. Bussing's treatment records show she is improving or

appear to be free from anxiety or depression, but the record is far less clear than

presented by the ALJ. Moreover, some improvements in mental health should not

be determined as evidence that the impairments are no longer limiting, but rather

the entire record and diagnostic picture must be considered. *See Holohan v.*

*Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (Some improvements in a

claimant with severe panic attacks, anxiety, and depression does not meant the

impairments no longer affect the ability to function in the workplace.)

The records of treating physician Dr. James Mullen, M.D., indicate that

during her visits Ms. Bussing's affect and mood were normal, her mental status

1  was alert, and she did not exhibit anxiety, depression, or acute distress during any

2  of her visits. AR 277, 281, 286, 295. His records also indicate that she needed

3  medication and counseling, which imply that he did not believe her to be free from

4  the conditions. AR 277.

5       On May 8, 2012, Dr. Lynn G. Lagerquist, M.D., noted Ms. Bussing to be "a

6  cooperative patient in no acute distress." AR 303. These notes, however, are from

7  Dr. Lagerquist's physical exam during a visit to discuss her endocrine issues, not

8  her mental health concerns. AR 303. It is unclear how much her mental

9  impairments would have been explored in this visit, especially if there were no

10 acute manifestations at the time.

11      Conversely, there are numerous instances in the record that demonstrate

12 clinically observed mental impairments. The first physician to evaluate Ms.

13 Bussing following her onset date was Dr. Thompson, on behalf of the Washington

14 State Department of Social and Health Services. AR 247-251. Dr. Thompson

15 observed both depression and anxiety/panic during the examination on July 27,

16 2011. AR 248. The records indicate observations of "anxiety, depression, and

17 anger [that] interfere[s] with ability to interact with others in a work setting." AR

18 250. The ALJ focused the credibility analysis on the treatment note that Ms.

19 Bussing "calms during the evaluation." AR 251. This is not enough when Dr.

20 Thompson's records are reviewed in their entirety.

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 17**

1    Dr. Rosekrans observed anxiety on June 26, 2012, AR 258; however, he also

2  stated that nervous behavior was "normal for someone coming to this type of

3  evaluation." AR 260. Nevertheless, testing indicated "extremely high" scores on

4  the scale of anxiety. AR 261. Three pages related to the Personality Assessment

5  Inventory Clinical Interpretative Report are missing from the record, but based on

6  what is available, the Report indicates significant anxiety issues "unusual even in

7  clinical samples" and "a number of difficulties consistent with a significant

8  depressive experience." AR 264. Overall, Dr. Rosekrans's assessment corroborates

9  Ms. Bussing's allegations regarding her symptoms.

10    Dr. Gloria Lowe, M.D., recorded that on March 14, 2012, Ms. Bussing

11  appeared to have an anxious and depressed effect. AR 315-316.  The ALJ does not

12  address this finding other than to note that Ms. Bussing does not take lorazepam

13  daily. AR 27. While the notes do state that Ms. Bussing does not take this

14  medication daily, they also explain Ms. Bussing's concern about the addictive

15  properties of this drug and the "need to discontinue." AR 316. In fact, Dr. Lowe

16  actually prescribes a taper to take her off lorazepam. *Id.* The ALJ does not provide

17  clear and convincing reasons for not accounting for Dr. Lowe's observations of

18  anxiety and depressed effect.

19  //

20  //

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 18**

### d. The Record Prior to Ms. Bussing's Alleged Onset Date

Generally, "[m]edical opinions that predate the alleged onset date of disability are of limited relevance." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir.). In the case of ongoing impairments, such as mental impairments, as opposed to impairments caused by a discrete event, earlier records may be relevant the closer they are in time to the alleged onset date. *See Howard v. Colvin*, No. 3:14-CV-05885, 2015 WL 3477152, at *5 (W.D. Wash. June 2, 2015). Consideration of work patterns prior to the alleged onset date may also have possible relevance. *See Thomas v. Barnhart*, 278 F.3d 948, 959 (9th Cir. 2002).

The ALJ began her credibility analysis by noting a nearly twenty-month gap between the time Ms. Bussing quit her last relevant work and the alleged onset date of her symptoms. AR 26. She does not, however, cite any relevant information from this period, such as activities or events that would discredit Ms. Bussing. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (court noted that the claimant was able to perform a myriad of activities since the time she began to face limitations, but before her onset date, as evidence for an adverse credibility determination). Simply pointing out that it exists is not a clear and convincing reason for an adverse credibility determination.

The ALJ incorrectly stated in her decision that Ms. Bussing stopped working for "reasons other than her impairments." AR 26. The ALJ did not explain what

1   the reasons were or how they were relevant to Ms. Bussing's credibility. Further,

2   this assertion is not supported by the record or Ms. Bussing's testimony. At the

3   hearing, Ms. Bussing stated that she worked for a year and a half as a call center

4   representative until she was fired in 2009. AR 42. Ms. Bussing explained that she

5   was fired for "bad attendance issues" and that she wouldn't go to work due to her

6   anxiety. *Id.* Her testimony is consistent with the Disability Report filed on July 22,

7   2011, which states she was let go for "attendance issues," AR 195, and the

8   examination notes of Dr. Pollack, AR 349. In fact, Dr. Pollack's records state that

9   she was let go from numerous jobs because of attendance issues. *Id.* There is no

10  further exploration of what caused these attendance issues if the ALJ found Ms.

11  Bussing's explanation was insufficient. The ALJ offered nothing in contradiction,

12  nor any other clear and convincing reasoning for using this factor in an adverse

13  credibility determination.

14      The ALJ also evaluated Ms. Bussing's credibility using records from 2008

15  from a marriage counselor that treated Ms. Bussing and her ex-husband. AR 28.

16  These records are not temporally related to Ms. Bussing's alleged onset date and

17  are, at best, of limited relevance. *See Carmickle,* 533 F.3d at 1165. Ms. Bussing's

18  marriage ended prior to her onset date, as she was in a nineteen-month relationship

19  with her former fiancé that passed away in June 2011. AR 259.

20

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 20

If having any purpose at all, however, the records tend to show that Ms. Bussing suffered mental impairments well before her alleged onset date and support her allegations. AR 253-257. The ALJ refers in her decision only to a single line from the records that support her finding of diminished credibility: "[c]lients are good at getting the welfare system to work for them. 'We can figure out how much we have to work to make it.'" AR 28, 254. The rest of the record indicates disorganized, unkempt individuals demonstrating objectively observable characteristics of mental illness. AR 254. Further, there is no indication that even if Ms. Bussing and her ex-husband were attempting to get the system to "work for them" in 2008 that she would continue to do so many years later and without her ex-husband. The record does not indicate how much of an influence her ex-husband was on Ms. Bussing, but it is clear that Ms. Bussing was in an abusive marriage. AR 273-274. In light of the record as a whole and the temporal distance between the records and Ms. Bussing's alleged onset date, this single line from 2008 does not constitute a clear and convincing reason for an adverse credibility determination.

e. **Ms. Bussing's Daily Activities**

Finally, the ALJ looked to Ms. Bussing's daily activities to evaluate the credibility of her symptoms. AR 28. The ALJ noted that Ms. Bussing was able to use public transportation regularly, hike, camp, sew, garden, and leave the house

1    on her own, which all suggested that her symptoms were not as limiting as she

2    suggested. *Id.* This is the area in which the ALJ does provide clear and convincing

3    reasons for Ms. Bussing's adverse credibility.

4        A claimant's daily activities may support an adverse credibility finding if (1)

5    the claimant's activities contradict his or her other testimony, or (2) "the claimant

6    is able to spend a substantial part of his day engaged in pursuits involving

7    performance of physical functions that are transferable to a work setting." *Orn v.*

8    *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing Fair, 885 F.2d at 603). "The ALJ

9    must make 'specific findings relating to [the daily] activities' and their

10    transferability to conclude that a claimant's daily activities warrant an adverse

11    credibility determination." Id. (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th

12    Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for

13    benefits. *Fair*, 885 F.2d at 603.

14        The ALJ reasoned that Ms. Bussing was exaggerating her symptoms in part

15    because she could leave her home by herself and use public transportation. AR 28.

16    The record does indicate that Ms. Bussing makes some efforts to minimize her

17    contact with the public. For example, Ms. Bussing prefers to go to the grocery

18    store at 3:00 a.m. because "there's nobody in the store besides the employees." AR

19    57. Nevertheless, some of Ms. Bussing's activities are inconsistent with the level

20    of isolation that she asserts. Ms. Bussing stated in her Function Report, dated

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 22**

August 2011, that she enjoys a variety of hobbies, including visiting the public library "whenever it is open." AR 217. This is inconsistent with an individual who actively avoids the public. Based on Ms. Bussing's daily activities, the Court finds the ALJ did not err in an adverse credibility finding.[3]

### 3.  **Ms. Bussing's Credibility Regarding her Physical Impairments**

The ALJ specifically considered the physical limitations of Ms. Bussing that were not alleged in her initial application nor evaluated at the state level, AR 28, such as a thyroid disorder and hepatitis C. AR 29. Primarily related to credibility are the limitations allegations of significant fatigue.

On May 8, 2012, Dr. Lagerquist stated that Ms. Bussing walked a mile three days per week. AR 301. At her hearing nearly one year later, the ALJ asked whether Ms. Bussing was still exercising at this level. AR 51. Ms. Bussing replied that she stopped because of increased fatigue, and that she could only walk an eighth to quarter of a mile. *Id*. In her decision, the ALJ stated that the objective evidence does not support this claim. AR 29.

---

[3] The Court would like to note that, despite the overall finding, the ALJ took some unreasonable liberties with Ms. Bussing's credibility determination. In particular, the Court finds the reasoning that Ms. Bussing is not as limited as she claims because she has a boyfriend is an unreasonable limitation. Barring a claimant, even one with social anxiety, from having a partner would be a high penalty. Even the most extreme anxiety cases do not require complete isolation at all times.

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 23**

The record lacks evidence that supports or refutes Ms. Bussing's testimony that she has become more fatigued since May 2012 to dramatically limit her exercise ability. The only record after May 2012 that addresses physical impairments is a June 2012 visit for a foot infection. AR 318-320. The ALJ's statement that the objective evidence does not support Ms. Bussing's claims is true but there's also nothing contradictory.

The ALJ's unfavorable credibility determination with regard to Ms. Bussing's physical limitations was in error. However, because Ms. Bussing was found to be less than credible with regard to her mental limitations, the Court will accept the ALJ's adverse credibility determination as free from legal error.

**B. The ALJ Properly Rejected the Opinions of Plaintiff's Treating Physician.**

**1. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester,* 81 F.3d at 830.

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id.* at 803-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id.* at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**2.  The ALJ provided specific and legitimate reasons for rejecting some of Plaintiff's physicians' opinions based on substantial evidence in the record.**

**a. Dr. Thompson**

The ALJ assigned no weight to examining physician Dr. Thompson's conclusion that Ms. Bussing would be unlikely to sustain gainful employment due to difficulty interacting in a work setting with coworkers and supervisors. AR 26,

250. The ALJ stated that this opinion was inconsistent with the doctor's own observations of Ms. Bussing's behavior and assessments, which included no more than "moderate social limitations." AR 26. This is a correct assessment of the record. Dr. Thompson finds moderate limitations in Ms. Bussing's ability to: (1) perform routine tasks without undue supervision; (2) communicate and perform effectively in a work setting with limited public contact; and (3) maintain appropriate behavior in a work setting. AR 250. Otherwise, Dr. Thompson found Ms. Bussing to have no limitations with simple and complex instructions or learning new tasks. *Id.*

The ALJ's reasoning for assigning no weight to Dr. Thompson's assessment of Ms. Bussing's ability to work is supported by the record. Moreover, while the ALJ did not assign weight to that part of Dr. Thompson's assessment, the ALJ did account for Ms. Bussing's moderate social limitations in her residual functional capacity. Specifically, the ALJ included the restrictions of no contact with the public and no teamwork assignments. AR 25. Thus, the court finds no error in the rejection of the portion of Dr. Thompson's opinion that Ms. Bussing could not sustain gainful employment.

**b. Drs. Clifford and Flanagan**

The ALJ gave significant weight to the opinions to the state agency evaluators Rita Flanagan, PhD, and Thomas Clifford, M.D. AR 27. These opinions

1  are consistent with Dr. Thompson's evaluation, and in some cases actually more

2  restrictive. For example, Dr. Clifford found that Ms. Bussing was not limited with

3  regard to simple instructions, but her persistence would wane with more complex

4  tasks. AR 76. This is more restrictive than Dr. Thompson's evaluation that Ms.

5  Bussing had no limitations with both simple <u>and</u> complex instructions. AR 250.

6      Despite her reliance on Dr. Clifford's opinion, the ALJ actually introduced

7  even more restrictions than those found by this doctor because of subsequent

8  evidence. AR 27. This included the restriction from all contact with the public, as

9  opposed to the "occasional superficial social interactions" Dr. Clifford proposed.

10  AR 27, 73.

11      If anything, the ALJ was more deferential to Ms. Bussing's condition than

12  the opinions of these doctors, and the Court finds no error.

13  **3**. **The ALJ did not provide specific and legitimate reasons for rejecting**

14  **some of Plaintiff's physicians' opinions based on substantial evidence in the**

15  **record.**

16      **a. Dr. Lowe**

17      The ALJ gave little weight to Dr. Lowe's opinion that Ms. Bussing's anxiety

18  was "significant and disabling." AR 27. The ALJ explained this decision was due

19  to the fact Dr. Lowe saw Ms. Bussing only once and that her conclusion was based

20

1   solely on Ms. Bussing's self-report. Both of these reasons are legally insufficient

2   for discrediting Dr. Lowe's opinion.

3          Length of treatment relationship and frequency of evaluation are factors for

4   an ALJ to consider when determining the weight to give a physician's opinion. 20

5   C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). If a treating physician has seen the

6   claimant a number of times "to have obtained a longitudinal picture" of the

7   claimant's impairment, the ALJ will give the source's opinion more weight than a

8   non-treating provider. *Id.*

9          In the opinion, the ALJ found that Dr. Lowe lacked the requisite longitudinal

10  perspective for a valuable opinion because she saw Ms. Bussing only once. AR 27.

11  However, Dr. Lowe is part of a clinic with multiple doctors. AR 305-326. It is very

12  likely that Dr. Lowe had access to the records of the same clinic that Ms. Bussing

13  had been seeking treatment between 2008 and 2012.  AR 305-326.

14         Further, despite Dr. Lowe being a treating physician, the ALJ provides more

15  weight to non-examining physicians Drs. Flanagan and Clifford, as well as

16  examining physicians Drs. Thompson, Rosekrans, and Pollack, all of which only

17  saw Ms. Bussing once. AR 247-252, 258-266, 348-357. The ALJ does not explain

18  why these opinions are more based on the same amount of examination.

19         The ALJ also diminished the weight of Dr. Lowe's opinion because they

20  were "based solely on the claimant's self-report." AR 27. This is incorrect. In her

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 28**

1  Physical Exam notes, Dr. Lowe noted that Ms. Bussing had an anxious and

2  depressed affect. AR 316. This is objective evidence from Dr. Lowe regarding Ms.

3  Bussing, not self-reported symptoms.

4      The Court finds that the ALJ erred in assigning little weight to Dr. Lowe's

5  opinion.

6      **b. Dr. Pollack**

7      The ALJ assigned significant weight to parts of Dr. Pollack's opinion except

8  the marked limitations with regard to Ms. Bussing's ability to: (1) perform

9  activities within a schedule, maintain regular attendance, and be punctual within

10 customary tolerances; and (2) complete a normal workday and workweek without

11 interruptions from psychologically based symptoms and to perform at a consistent

12 pace without an unreasonable number and length of rest periods. AR 28, 355. The

13 ALJ cited that these limitations were given no weight due to internal and external

14 inconsistencies.

15     The Court disagrees with the ALJ, particularly with regard to Ms. Bussing's

16 ability to follow a schedule. Her testimony and the record–including Dr. Pollack's

17 report–are consistent that she was fired from her previous job due to attendance

18 issues. AR 42, 195, 349. Dr. Pollack's report also notes that Ms. Bussing lost the

19 majority of her previous positions due to attendance issues, and that in addition to

20 problems with employment, Ms. Bussing was unable to manage college courses.

AR 349. Further, she missed her first appointment with Dr. Pollack and showed up an hour late for the second. AR 348. This is objective evidence that scheduling causes her significant difficulties.

The ALJ failed to provide the specific and legitimate reasons supported by substantial evidence to explain these alleged inconsistencies. The Court finds Dr. Pollack's report to be internally consistent, and it finds no external inconsistencies that support the ALJ's determination to afford no weight to these two specific limitations. Thus, the Court finds that the ALJ erred in affording no weight on Dr. Pollack's opinion with regard to Ms. Bussing's marked limitations.

**C. Remedy**

The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further proceedings are necessary for a proper determination to be made.

On remand, the ALJ shall reconsider the limitations assessed by Drs. Lowe and Pollack. The ALJ shall recalculate Ms. Bussing's residual functional capacity in light of the outcome of these additional proceedings. The ALJ shall then present

this residual functional capacity to a vocational expert to help determine if Ms. Bussing is capable of performing any other work existing in sufficient numbers in the national economy.

### VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2.  Defendant's Motion for Summary Judgment, **ECF No. 17,** is **DENIED.**

3. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 18th day of February, 2016.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 31**